1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   JOHN MARTINO, et al.,                          Case No. 14-cv-04358-PSG

8                      Plaintiffs,                 **ORDER GRANTING MOTION FOR**
                                                    **CLASS CERTIFICATION**
9          v.
                                                    **(Re:  Docket No. 26)**
10   ECOLAB, INC.,

11                     Defendant.

12          Defendant Ecolab, Inc. distributes various cleaning and sanitizing products—think

13   detergents, soaps and cleaning solutions—to a range of restaurant, hotel, hospital and other end

14   users.[1]  To help sell these products, Ecolab provides dispensers and maintenance for free, and it

15   dispatches Territory Managers and Hospitality Territory Managers to customer locations, where

16   they perform maintenance services.[2]

17          Starting in June 2010, Ecolab employed Plaintiffs John Martino and Adonis Amoroso,

18   along with over 200 others, as TMs or HTMs.[3]  For salary purposes, Ecolab classified TMs and

19   HTMs as "outside salespersons"—meaning employees who spend more than half their time

20   selling products or services in the field and are exempt from California regulations that might

21   entitle them to overtime pay.[4]  In fact, Plaintiffs allege, they and their colleagues in the same

22

23   [1] *See* Docket No. 30-1, Ex. 3 at ¶¶ 3-7.

24   [2] *See id.* at ¶¶ 8-9, 12-15.

25   [3] *See* Docket No. 1-2, Ex. B at ¶¶ 6, 10; Docket No. 26-5, Ex. C at ¶ 4; *id.*, Ex. D at ¶ 4; Docket
26   No. 26-10, Ex. I at 3-4.

27   [4] Cal. Code Regs. tit. 8, § 11040(1)(C), (2)(M); *see* Docket No. 1-2, Ex. B at ¶ 11.

28                                                 1

United States District Court
Northern District of California

positions spent most of their workdays installing, servicing and repairing Ecolab products at customer locations.[5]  Plaintiffs therefore claim that Ecolab's classification was inaccurate and that Ecolab owes overtime wages to all of these employees.[6]

Plaintiffs now move for class certification under Federal Rule of Civil Procedure 23(b)(3).[7]  Ecolab opposes, mainly on the ground that common questions do not predominate across all putative class members.[8]  After reviewing the substantial record that the parties have compiled, the court finds that Plaintiffs meet the standard for class certification set forth in Rule 23, as the Supreme Court and the Ninth Circuit have construed it.  Plaintiffs' motion is GRANTED.

## I.

Ecolab considers its TMs and HTMs to be sales employees.[9]  The company's sales model focuses on three goals:  retaining current customers, growing sales to those customers and gaining new customers.[10]  Ecolab assigns each TM or HTM somewhere between 20 to 150 customer accounts.[11]  Most of Ecolab's products are designed to be used with custom-made dispensers that Ecolab supplies at no cost.[12]  TMs and HTMs then visit their assigned customers regularly to check on their dispensers, and they use these opportunities to build relationships with customers

---

[5] *See* Docket No. 1-2, Ex. B at ¶¶ 6, 11; Docket No. 26-5, Ex. C at ¶ 5; *id.*, Ex. D at ¶ 5.

[6] *See* Docket No. 1-2, Ex. B at ¶¶ 9-17.

[7] *See* Docket No. 26.

[8] *See* Docket No. 30.

[9] *See* Docket No. 30-1, Ex. 3 at ¶ 11; Docket No. 30-3 at 170:25-171:17.  TMs and HTMs differ only in the types of customers that they serve—TMs' customers are in the food service industry, while HTMs' customers tend to be in the hospitality or long-term care industries.  *See* Docket No. 26-3, Ex. B at 26:11-28:17, 30:9-32:4; *id.*, Ex. D at 42:23-43:11.

[10] *See* Docket No. 30-1, Ex. 3 at ¶ 10; Docket No. 30-2 at 116:13-117:3.

[11] *See* Docket No. 30-1, Ex. 3 at ¶ 25; Docket No. 30-4, Ex. 6 at ¶ 4; Docket No. 26-6, DeLeeuw Decl., ¶ 6.

[12] *See* Docket No. 30-1, Ex. 3 at ¶¶ 6-7; Docket No. 30-3 at 161:22-162:9.

2

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

and potentially sell them more products.[13]  To that end, at each customer visit, the TM or HTM creates a Service Detail Report summarizing the results of the inspection and inventory.[14]  The TM or HTM then presents the SDR to the customer's manager, who ideally has the authority to order new or upgraded Ecolab products.[15]  TMs and HTMs also prospect for new business through cold calls and referrals.[16]  Their pay includes commissions based on a percentage of Ecolab's total sales to their customers as compared to sales targets as well as bonuses calculated from growth in sales.[17]  Ecolab grants TMs and HTMs great latitude in how they achieve these goals.[18]

Both Plaintiffs in this action were longtime Ecolab employees.  Martino worked there from 1980 until his retirement in 2013,[19] and Amoroso has worked there since 2005.[20]  Martino was a HTM during the last few years of his employment, including the claims period starting in June 2010.[21]  Amoroso officially has held the TM job title throughout his tenure.[22]  Ecolab has assigned Amoroso to train both TMs and HTMs, and both receive the same instruction.[23]

---

[13] See Docket No. 30-1, Ex. 3 at ¶¶ 16-17; Docket No. 30-3 at 130:2-131:20, 135:2-138:9, 205:19-24.

[14] See Docket No. 30-1, Ex. 3 at ¶¶ 19-20.

[15] See Docket No. 30-1, Ex. 1 at 243:22-244:3, 362:16-363:10; id., Ex. 2 at 288:14-291:17, 299:16-300:3.

[16] See Docket No. 30-1, Ex. 3 at ¶ 21; Docket No. 30-2 at 49:10-15, 125:10-21.

[17] See Docket No. 30-1, Ex. 3 at ¶ 26; Docket No. 30-3 at 238:20-239:1; Docket No. 30-5, Ex. 21 at 30:18-31:25, 79:15-80:11, 116:9-118:14.

[18] See Docket No. 30-2 at 63:20-64:8, 117:4-12, 121:22-122:2; Docket No. 30-3 at 170:25-172:2; Docket No. 30-5, Ex. 21 at 39:3-14.

[19] See Docket No. 26-5, Ex. C at ¶ 4.

[20] See id., Ex. D at ¶ 4.

[21] See id., Ex. C at ¶ 4.

[22] See id., Ex. D at ¶ 4.

[23] See id. at ¶ 5.

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1    In practice, despite their nominal focus on sales, Plaintiffs spent "the substantial majority

2    of [their] working time" performing maintenance tasks—"installing, servicing and repairing

3    commercial dispensers and related equipment."[24]  The equipment that Ecolab issued them

4    reflected these duties; Plaintiffs carried safety glasses, hammers, pipe cutters, drills, hacksaws,

5    chisels, WD-40 and a variety of other tools to each of their customer visits.[25]  And though

6    Plaintiffs regularly worked more than 40 hours in a work week, and they often had to work

7    weekends too, Ecolab's paychecks only reflected 86.67 hours worked every two weeks because

8    the company considered them overtime-exempt sales employees.[26]

9    Plaintiffs filed their initial complaint in state court on June 4, 2014[27] and amended their

10   complaint to add a new claim on August 21, 2014.[28]  On September 26, Ecolab removed the action

11   to this court.[29]  After nearly a year of discovery and almost three months of briefing, the court

12   heard oral arguments on the instant motion.[30]  Plaintiffs' amended complaint contains four causes

13   of action:  (1) failure to pay wages due under Cal. Lab. Code §§ 201 and 202; (2) failure to

14   provide accurate itemized wage statements in violation of Cal. Lab. Code § 226; (3) unfair

15   competition and (4) civil penalties under Cal. Lab. Code § 558 and California's Private Attorney

16   Generals Act.[31]

17

18

19   [24] *Id.*, Ex. C at ¶ 5; *id.*, Ex. D at ¶ 5.

20   [25] *See id.*, Ex. C at ¶¶ 10-11; *id.*, Ex. D at ¶¶ 10-11.

21   [26] *See id.*, Ex. C at ¶¶ 6-9; *id.*, Ex. D at ¶¶ 6-9.

22   [27] *See* Docket No. 1-2, Ex. A; Docket No. 26-4 at ¶ 2.

23   [28] *See* Docket No. 1-2, Ex. B; Docket No. 26-4 at ¶ 3.

24   [29] *See* Docket No. 1; Docket No. 26-4 at ¶ 5.

25   [30] *See* Docket No. 23 at 2; Docket No. 29 at 2; Docket No. 38.

26   [31] *See* Docket No. 1-2, Ex. B at ¶¶ 9-53.

27

28

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

## II.

This court has jurisdiction under 28 U.S.C. § 1332(d).  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[32]

## III.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"[33]  To satisfy class certification requirements, class members' claims must be capable of satisfaction in "one stroke."[34]  To satisfy the four threshold requirements of Fed. R. Civ. P. 23(a), (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality) and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy).[35]  Plaintiffs seeking class certification also must satisfy the requirements of Rule 23(b), subdivisions 1, 2 or 3, which define three different types of classes.[36]

Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), the predominance standard.[37] To certify a class under Rule 23(b)(3), the party seeking class certification must establish both that (1) "questions of law or fact common to class members predominate over any questions affecting

---

[32] *See* Docket Nos. 13, 16.

[33] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

[34] *Id.* at 2551.

[35] *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)-(4)); *see also Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

[36] *See* Fed. R. Civ. P. 23(a)-(b); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *Leyva*, 716 F.3d at 512.

[37] *See* Docket No. 26 at 16.

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

only individual members" and that (2) a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy."[38]  "The shared legal or factual issues must be of sufficient importance to the case that the Court is convinced that the most efficient, fair, and sensible method of adjudication is through a class action."[39]  As a result, the predominance inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[40]

"Rule 23 does not set forth a mere pleading standard."[41]  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[42]  This is a "rigorous analysis" that often "will entail some overlap with the merits of the plaintiff's underlying claim."[43]

Ecolab does not dispute that the putative class and Plaintiffs' counsel satisfy the numerosity and adequacy requirements of Rule 23.  Ecolab has disclosed at least 233 putative class members,[44] and it would be impractical to join so many people in a single action.[45]  The

---

[38] Fed. R. Civ. P. 23(b)(3).

[39] *Stitt v. S.F. Mun. Transp. Agency*, Case No. 12-cv-3704, 2014 WL 1760623, at *2 (N.D. Cal. May 2, 2014) (citing Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10–C § 10:274).

[40] *Hanlon*, 150 F.3d at 1022 (internal citations omitted).

[41] *Wal-Mart Stores*, 131 S. Ct. at 2551.

[42] *Id.* (emphasis in original).

[43] *Wal-Mart Stores*, 131 S.Ct. at 2551; *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."); 7AA Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785 (3d ed. 2005) (noting that the court is not "limited to an evaluation of the pleadings in deciding whether the [Rule 23(b)(3)] standard is met" and that the predominance "inquiry does require an examination of the elements of the claims and defenses").

[44] *See* Docket No. 26-10, Ex. I at 3-4.

6

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1    named Plaintiffs have no "conflicts of interest with other class members," and Plaintiffs' counsel

2    are more than qualified to "prosecute the action vigorously on behalf of the class."[46]   The parties

3    disagree, however, about the remaining requirements for class certification.

4          *First*, Plaintiffs allege that all the members of the putative class were ineligible for the

5    outside salesperson overtime exception.  As indicated above, that exemption applies to employees

6    who "customarily and regularly work[] more than half the working time away from the employer's

7    place of business selling tangible or intangible items or obtaining orders or contracts for products,

8    services, or use of facilities."[47]   In *Ramirez v. Yosemite Water Co.*, the California Supreme Court

9    explained that the regulation "takes a purely quantitative approach, focusing exclusively on

10   whether the individual 'works more than half the working time'" on the tasks above.[48]

11   Furthermore, California law "does not contain any provision that reclassifies intrinsically

12   nonexempt nonsales work as exempt based on the fact that it is *incidental* to sales."[49]   "The

13   language of the state exemption only encompasses work directly involved in 'selling . . . items or

14   obtaining orders or contracts.'"[50]   A particular physical task might relate to sales, in the sense that

15

16   ───────────────────────────────

17   [45] *Cf. Jordan v. Los Angeles County*, 669 F.2d 1311, 1319-20 (9th Cir.) ("[W]e would be inclined to find the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71 . . . ."), *rev'd on other grounds*, 103 S. Ct. 35 (1982); *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 253-54 (N.D. Cal. 2012) (citing *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010)) ("The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members.").

18

19

20

21   [46] *Hanson*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

22

23   [47] Cal. Code Regs. tit. 8, § 11040(1)(C), (2)(M); *id.* § 11050(1)(D), (2)(M); *id.* § 11070(1)(C), (2)(J); *see also* Cal. Lab. Code § 1171 ("The provisions of this chapter . . . shall not include any individual employed as an outside salesman.").

24

25   [48] 20 Cal. 4th 785, 797 (1999) (quoting Cal. Code Regs. tit. 8, § 11070(2)(J)).

26   [49] *Id.*

27   [50] *Id.* (alteration in original) (quoting Cal. Code Regs. tit. 8, § 11070(2)(J)).

28                                                          7
     Case No. 14-cv-04358-PSG
     ORDER GRANTING MOTION FOR CLASS CERTIFICATION

a failure to perform that task "would lead to loss of the customer, but that does not make [the task] a sales activity, any more than an attorney's preparation of a legal brief in order to satisfy and thereby retain a client is a sales activity."[51]

"In other words, under the California exemption, the only question is whether the employee spends over 50% of his or her time involved in activities directly related to sales, not including activities incidentally related to sales."[52]  The first step is looking into "how the employee actually spends his or her time."[53]  The court also should "consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these impressions were themselves realistic given the actual overall requirements of the job."[54]  Exemptions to overtime pay requirements "are narrowly construed,"[55] and "[t]hey are applied only to those employees 'plainly and [unmistakably] within their terms and spirit.'"[56]

As a result, deciding whether an employee qualifies for an exemption may "turn[] on a detailed, fact-specific determination" of "how the employee actually spends his or her time."[57]  However, "neither variation in the mix of actual work activities undertaken during the class period . . . , nor differences in the total unpaid overtime compensation owed each class member, bars

---

[51] *Id.* at 802.

[52] *Ross v. Ecolab Inc.*, Case No. 13-cv-05097, 2015 WL 5681323, at *3 (N.D. Cal. Sept. 28, 2015).

[53] *Ramirez*, 20 Cal. 4th at 802.

[54] *Id.*

[55] *Id.* at 794.

[56] *In re United Parcel Serv. Wage & Hour Cases*, 190 Cal. App. 4th 1001, 1010 (2010) (second alteration in original) (quoting *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002)).

[57] *Ramirez*, 20 Cal. 4th at 790, 802.

8

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

class certification as a matter of law."[58]  "Where standardized job duties or other policies result in employees uniformly spending most of their time on nonexempt work, class treatment may be appropriate even if the case involves an exemption that typically entails fact-specific individual inquiries."[59]  "Individual issues do not render class certification inappropriate so long as such issues may effectively be managed."[60]  On the other hand, the court should not certify a class if deciding whether a group of employees qualified for an exemption would necessitate "several hundred mini-trials with respect to each [employee's] actual work performance."[61]  The mere existence of a uniform exemption policy is not enough to justify class treatment if the "court[] must still ask where the individual employees actually spent their time."[62]

Plaintiffs contend that the putative class meets the predominance requirement because Ecolab misclassified every TM and HTM under the outside salesperson exemption.  In support of this claim, Plaintiffs submit dozens of declarations from putative class members, all of whom confirm that they spent most of their working time servicing customer equipment and performing other non-sales tasks.[63]  Aside from installing, repairing and maintaining commercial dispensers on preplanned visits, these employees also spent significant amounts of time responding to emergency service calls.[64]  Ecolab's corporate representative agreed that installing and maintaining machines takes up "a majority of the time" that TMs and HTMs spend at customer locations.[65]  The same representative also testified that Ecolab classifies all TMs and HTMs as

---

[58] *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 335 (2004).

[59] *Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 31 (2014).

[60] *Sav-on Drug Stores*, 34 Cal. 4th at 334.

[61] *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009).

[62] *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

[63] *See* Docket No. 26-6 to 26-9 ("Employee Decls.") at ¶¶ 5-13.

[64] *See id.* at 4-5.

[65] Docket No. 26-3, Ex. B at 143:2-6.

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1  outside salespeople exempt from overtime pay requirements.[66]  In light of the uniform corporate

2  policy and similar job responsibilities, Plaintiffs maintain, the dispute may be adjudicated on a

3  class basis.

4        Ecolab counters that the putative class members' experiences differed so widely that the

5  putative class cannot satisfy the predominance requirement for class certification.[67]  More broadly,

6  Ecolab's hands-off approach to TMs and HTMs means that each of them does the job differently.

7  Ecolab also notes that the lack of reliable timekeeping records will render damages difficult to

8  determine.  Therefore, Ecolab says, individualized issues dominate despite the blanket exemption

9  policy.  The variance in workstyle is not, however, the critical question in determining

10  commonality, typicality and predominance.  Ecolab may argue that its employees' lack of direct

11  sales activity "diverge[d] from [Ecolab's] realistic expectations" or that its displeasure was

12  "realistic given the actual overall requirements of the job."[68]  However, these "considerations . . .

13  are likely to prove susceptible of common proof," and they do not preclude class certification.[69]

14        Individualized damages are no bar either.  In this circuit, "the presence of individualized

15  damages cannot, by itself, defeat class certification."[70]  Ecolab is correct that a complete absence

16  of timekeeping records may affect predominance,[71] but that is not the case here.  Each TM and

---

[66] *See id.* at 51:15-24.

[67] As is often the case with motions for class certification under Rule 23(b)(3), the "'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997).  Here, the same goes for typicality.  Accordingly, the court will "train[] its attention on the 'predominance' inquiry." *Id.*

[68] *Ramirez*, 20 Cal. 4th at 802

[69] *Sav-on Drug Stores*, 34 Cal. 4th at 337.

[70] *Leyva*, 716 F.3d at 514; *see also Sav-on Drug Stores*, 34 Cal. 4th at 334-35 ("We have recognized that the need for individualized proof of damages is not per se an obstacle to class treatment . . . .").

[71] *See, e.g., Alakozai v. Chase Inv. Servs. Corp.*, Case No. 11-cv-09178, 2014 WL 5660697, at *18 (C.D. Cal. Oct. 6, 2014); *Rosenberg v. Renal Advantage, Inc.*, Case No. 11-cv-02152, 2013 WL

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

HTM uses a tablet or computer to fill out Service Detail Reports and Extra Service Reports for routine and emergency visits, respectively, and these SDRs and ESRs provide an estimate of how the employee actually spent his or her time.[72]  Like all timekeeping records, these are not perfect. One named Plaintiff testified at his deposition that he did not write up ESRs about half the time, for example if a short phone call could resolve the issue or if fixing the problem were so simple that putting it in writing might embarrass the customer.[73]  But, by and large, these documents "would enable the court to accurately calculate damages . . . for each claim" on a class-wide basis.[74]

By contrast, "[a]ny dispute over 'how the employee actually spends his or her time' . . . has the potential to generate individual issues."[75]  The court must evaluate whether individualized inquiries would be necessary to decide whether each employee in the putative class really did spend more half of his or her time on sales tasks.  As it often does, the class certification inquiry thus requires the court to "resolve factual issues related to the merits."[76]  Here, that includes weighing the numerous declarations and depositions that the parties have offered.

Plaintiffs submit testimony from more than 30 employees who claim to spend over half their time on non-sales tasks.[77]  Ecolab observes that certain of these declarants changed their

---

3205426, at *12 (S.D. Cal. June 24, 2013).

[72] *See* Docket No. 31-2, Ex. F at 39:15-43:21, 134:7-20; *id.*, Ex. I at 70:10-71:11 ;

[73] *See* Docket No. 30-1, Ex. 1 at 175:18-176:2, 178:16-179:15, 187:8-15.

[74] *Leyva*, 716 F.3d at 514.

[75] *Sav-on Drug Stores*, 34 Cal. 4th at 336-37 (quoting *Ramirez*, 20 Cal. 4th at 802); *see also Vinole*, 571 F.3d at 946-47 (affirming denial of class certification where individual issues about how employees spent their time predominated).

[76] *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 590 (9th Cir. 2010), *rev'd on other grounds*, 131 S. Ct. 2541 (2011).

[77] *See* Employee Decls.

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

estimates during their depositions.[78]  But most of these changes were relatively minor, and no

employee crossed the 50% threshold.[79]  More substantively, Ecolab derides these declarations as

"cookie-cutter" and argues that "they fail to explain the duties they characterize as 'non-sales.'"[80]

Although the declarations do follow a similar format, they differ substantially in their details,

reflecting a variety of job duties and work habits.  More importantly, each declaration includes a

litany of tasks that are not "directly involved in 'selling . . . items or obtaining orders or

contracts'"[81]—and thus do not qualify as sales under *Ramirez*.[82]

Of course, "[t]o the extent Plaintiffs' declarations offer legal conclusions as to what

constitutes selling and what does not, the [c]ourt . . . disregard[s] such legal conclusions in the

certification decision."[83]  But after examining each of these declarations, the court is satisfied that

the declarants' characterizations are correct.  Some of the tasks that TMs and HTMs perform are

unambiguously related to service and not sales.  These include testing, installing, repairing and

maintaining Ecolab equipment, as well as responding to emergency service calls.

Other tasks are closer to the line.  For example, TMs and HTMs check inventory on

customers' supplies, train customers' employees on how to use their equipment and order repair

---

[78] *See* Docket No. 30 at 7 & n.43.

[79] *See id.*  The largest difference came from the testimony of one employee who said that he spent less than 20% of his customer visits on sales but revealed at his deposition that he tried to set aside one day a week for prospecting, depending on what emergencies arose.  *See* Docket No. 26-6, Diaz Decl. at ¶¶ 13, 19; Docket No. 30-4, Ex. 11 at 49:10-51:15.  Even including the prospecting, this employee did not spend more than 50% of his time on sales tasks.

[80] Docket No. 30 at 16.

[81] *Ramirez*, 20 Cal. 4th at 797 (quoting Cal. Code Regs. tit. 8, § 11070(2)(J)).

[82] Stated otherwise, "the tasks discussed in both defendant's and plaintiffs' submissions comprise a reasonably definite and finite list," and the court therefore has enough information to classify them according to the *Ramirez* standard.  *Sav-on Drug Stores*, 34 Cal. 4th at 330-31.

[83] Docket No. 30 at 16 n.85 (citing *Mireles v. Paragon Sys., Inc.*, Case No. 13-cv-00122, 2014 WL 4409822, at *2-3 (S.D. Cal. Sept. 8, 2014)).

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

parts and testing materials as necessary.  But because the court must construe the exemption narrowly,[84] these too fall outside the sales category.  Checking inventory may contribute to sales, but it does not directly lead to new orders.[85]  In the same vein, training or talking with lower-level employees who have no authority to purchase products only indirectly gives rise to sales.  And repairing dispensers, dishwashing machines and other equipment is ancillary to the company's stated primary goal of selling cleaning and sanitizing products.  Placing orders for repair parts, therefore, also is not directly involved in sales.[86]  Alternatively, because "one who *only* performed these . . . tasks could not be considered a salesperson," none of them—taking inventory, interacting with low-level employees or repairing equipment—is "a sales activity in the conventional meaning of the word."[87]

Ecolab's declarations tell a different story.[88]  As an initial matter, as the parties' papers

---

[84] *See Ramirez*, 20 Cal. 4th at 794.

[85] *See Ross*, 2015 WL 5681323, at *3-6 (accepting plaintiffs' contention that "checking inventory on the client's supply" was a non-sales task); *cf.* 29 C.F.R. § 541.503(c) (providing that checking inventory is not in itself sales work under the analogous federal exemption).

[86] *Cf. Keyes Motors, Inc. v. Div. of Labor Standards Enforcement*, 197 Cal. App. 3d 557, 563-64 (1987) (holding that mechanics responsible for repairing vehicles were not "involved principally in *selling* a product or service" even though they were "essential to the sale of both parts and service").

[87] *Ramirez*, 20 Cal. 4th at 802; *see also Pablo v. ServiceMaster Global Holdings, Inc.*, Case No. 08-cv-03894, 2011 WL 2470093, at *5-6 (N.D. Cal. June 20, 2011) (applying this language from *Ramirez* in deciding whether certain tasks were sales or non-sales).

[88] *See* Docket No. 30-1, Ex. 4 at ¶ 14 ("90% of my working hours are sales-related activities that directly or indirectly result in new sales or allow me to continue to sell products to existing customers."); Docket No. 30-4, Ex. 6 at ¶ 23 ("I spend, on average, at least 70% of my work time each week devoted to sales and the remaining time on service and installations."); *id.*, Ex. 7 at ¶¶ 16-17 ("I would estimate that I spent seventy to eighty percent of my time on almost all of my calls as an HTM, selling Ecolab products. . . . I would estimate that I spent only about twenty to thirty percent of my time on any visit doing 'service work.'"); *id.*, Ex. 8 at ¶ 19 ("I spent at least 50% of my time in each visit doing sales and sales related tasks."); *id.*, Ex. 9 at ¶ 15 ("100% of my daily activities at Ecolab are sales or sales-related activities.  Even when a customer thinks I am doing just 'service,' I really am selling and they don't know it."); *id.*, Ex. 10 at ¶ 20 ("I spend more than 50% of my time in each visit doing sales and sales related tasks which do not in any way involve any physical, service task."); Docket No. 30-5, Ex. 20 at ¶ 24 ("I view absolutely

13

demonstrate, courts vary in their treatment of these so-called "happy camper" declarations—statements that an employer obtains from employees to prove their insusceptibility to class adjudication.[89]  Because "the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive."[90]  Especially where the employer has hidden its intentions or otherwise misled employees, some courts have held that this risk of coercion is so great that it limits or entirely eliminates any probative value these declarations might have.[91]

The declarations in this case, however, are more reliable because Ecolab's counsel did not obtain them "through a coercive or misleading procedure."[92]  When interviewing employees to

---

everything I am doing as sales-related and all of my time is spent related to sales, so if I work an eight hour day, I spent all eight hours doing sales-related work, regardless of the task."); *id.*, Ex. 23 at ¶ 18 ("[O]verall I spend about fifty-five plus percent of my time involved in sales activities . . . .").

[89] *E.g.*, *Villalpando v. Exel Direct, Inc.*, Case No. 12-cv-04137, 2015 WL 5179486, at *24 (N.D. Cal. Sept. 3, 2015); *Kellgren v. Petco Animal Supplies, Inc.*, Case No. 13-cv-00644, 2015 WL 5167144, at *6 (S.D. Cal. Sept. 3, 2015); *Casida v. Sears Holding Corp.*, Case No. 11-cv-01052, 2012 WL 3260423, at *6 (E.D. Cal. Aug. 8, 2012); *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011).

[90] *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994)).

[91] *See, e.g.*, *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1227-30 (S.D. Ala. 2008) (striking declarations because employer's conduct in obtaining them "unfairly and irrevocably tainted" the evidence); *Morden v. T-Mobile USA, Inc.*, Case No. 05-cv-02112, 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006) (discounting declarations obtained by an employer "because of the risk of bias and coercion inherent in that testimony").

[92] *Soto v. Castlerock Farming & Transport, Inc.*, Case No. 09-cv-00701, 2013 WL 6844398, at *4 (E.D. Cal. Dec. 23, 2013); *see also Villa v. United Site Services of Cal., Inc.*, Case No. 12-cv-00318, 2012 WL 5503550, at *14-15 (N.D. Cal. Nov. 13, 2012) (denying motion to strike employee declarations because there was no evidence of coercion by employer, even though employer's "conduct in approaching the potential class members was not exemplary"); *Rosales v. El Rancho Farms*, Case No. 09-cv-00707, 2011 WL 6153212, at *4-6 (E.D. Cal. Dec. 12, 2011) (declining to strike employee declarations because employer's counsel had done nothing wrong); *Kerce v. W. Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1366-67 (S.D. Ga. 2008) (same).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    solicit declarations, Ecolab's counsel gave each employee a two-page consent form clearly stating

2    that the employee's cooperation was voluntary and that it could affect the employee's potential

3    claims against Ecolab.[93]   Plaintiffs particularly object to the testimony of Leo Gonzalez, an Ecolab

4    TM who submitted a declaration in support of Ecolab's position[94] but now alleges that he "felt

5    pressured to cooperate" because he was "concerned about [his] job and [his] livelihood."[95]

6    Gonzalez does not say, however, that Ecolab's counsel misled him in any way except, arguably,

7    about how much of Gonzalez' work qualified as sales[96]—a legal conclusion that does not affect

8    the import of his declaration.  Gonzalez also claims that Ecolab's counsel changed the substance

9    of his testimony.[97]  But Gonzalez himself specified the time allocation figures that appear in his

10   declaration; Ecolab's counsel only adjusted them to add up to 100%.[98]  Nothing about Ecolab's

11   conduct in obtaining declarations, even as Gonzalez characterizes it, justifies disregarding them in

12   their entirety.

13         Even if the court considers Ecolab's declarations, however, they do not defeat class

14   certification.  A number of these declarants make conclusory statements about how much time

15   they spend on sales without providing any details.[99]  For the same reason that the court cannot take

16   _____

17   [93] *See* Docket No. 36-1, Ex. 1.

18   [94] *See* Docket No. 30-5, Ex. 23.

19   [95] Docket No. 31-1, Ex. A at ¶ 16.  Plaintiffs also obtained a declaration from Gonzalez in support
20   of their initial motion for class certification.  *See* Docket No. 26-7, Gonzalez Decl.  The latter
     contains some different figures but is not fundamentally inconsistent, aside from legal
21   conclusions, with the declaration that he gave Ecolab's counsel.  *Compare id.*, *with* Docket No.
     30-5, Ex. 23.

22   [96] *See id.* at ¶¶ 11, 13-15, 17.

23   [97] *See id.* at ¶ 12.
24

25   [98] *See id.* at ¶¶ 10-11; *id.*, Ex. 2; Docket No. 36-1 at ¶ 9; *id.*, Ex. 5.

26   [99] *See* Docket No. 30-1, Ex. 4 at ¶ 14 ("90% of my working hours are sales-related activities that
     directly or indirectly result in new sales or allow me to continue to sell products to existing
27   customers."); Docket No. 30-4, Ex. 6 at ¶ 23 ("I spend, on average, at least 70% of my work time
     each week devoted to sales and the remaining time on service and installations."); *id.*, Ex. 8 at ¶ 19

28
                                                    15

Plaintiffs' declarants' conclusions at face value, it must discount this testimony too.  Of those

declarants that did break down their time estimates, all of them misclassified some of the non-

sales tasks discussed above as sales, and none specifically included emergency service requests in

their time allocation figures.[100]  Two Ecolab declarants also testified at deposition that they had

counted non-sales tasks in the percentage of time they reported spending on sales.[101]  In *Ross*, a

---

("I spent at least 50% of my time in each visit doing sales and sales related tasks."); *id.*, Ex. 9 at ¶ 15 ("100% of my daily activities at Ecolab are sales or sales-related activities.  Even when a customer thinks I am doing just 'service,' I really am selling and they don't know it."); Docket No. 30-5, Ex. 20 at ¶ 24 ("I view absolutely everything I am doing as sales-related and all of my time is spent related to sales, so if I work an eight hour day, I spent all eight hours doing sales-related work, regardless of the task.").

[100] *See* Docket No. 30-4, Ex. 7 at ¶ 16 (counting inventory checks and discussions with all customer employees, including those not involved in decision-making, as "selling Ecolab products"); *id.*, Ex. 10 at ¶¶ 18, 20, 23 (considering checking equipment and training customer employees as sales tasks); Docket No. 30-5, Ex. 23 at ¶ 18 (counting inventory and training as sales activities).

[101] One employee, Vito Mastromarco, wrote in his declaration that he "spen[t], on average, at least 70% of [his] work time each week devoted to sales" without elaborating further.  Docket No. 30-4, Ex. 6 at ¶ 23.  At his deposition, however, Mastromarco testified that, when he reviewed and signed the declaration, he did not know what qualified as a sales task, and he considered inventory to be, at least in part, sales.  *See* Docket No. 31-2, Ex. B at 79:11-80:2; Docket No. 36-1, Ex. 2 at 101:6-9.  In fact, his deposition reveals that on a typical customer visit lasting several hours, he spent less than an hour on sales tasks.  *See* Docket No. 31-2, Ex. B at 27:5-34:24.  Only 20% of Mastromarco's customers actually placed orders with him; the rest ordered supplies directly from Ecolab or through a distributor.  *See id.* at 31:21-32:4.  And on only 15% of his visits did Mastromarco speak to a customer employee authorized to purchase products.  *See* Docket No. 36-1, Ex. 2 at 73:12-74:8.  Mastromarco also dealt with about one emergency service request a day, which took up 30 to 60 minutes on average.  *See* Docket No. 31-2, Ex. B at 40:23-41:1, 42:20-43:13.  At the end of an emergency call, he would spend 5 to 15 minutes speaking to the customer.  *See id.* at 45:8-46:10.  In addition to visiting existing customers, Mastromarco sought out new ones.  He devoted one day a week to prospecting as well as spending 15% of his time on most days visiting potential customers.  *See* Docket No. 31-2, Ex. B at 55:18-23; Docket No. 36-1, Ex. 2 at 95:24-96:25.  But overall, Mastromarco's deposition testimony does not substantiate his claim that he spent more than 50%, much less 70%, of his working time on sales.

Another Ecolab employee, Sander Nygaard, wrote in his declaration that he "spent seventy to eighty percent of [his] time on almost all of [his] calls . . . selling Ecolab products."  Docket No. 30-4, Ex. 7 at ¶ 16.  Unlike Mastromarco, Nygaard did break down his time more granularly, and the bulk of that 70-80% consisted of inventory checks and conversations with lower-level employees that do not qualify as sales tasks, as discussed above.  *See id.*  His deposition was

16

1    similar class action against Ecolab in this district, Chief Judge Hamilton recently denied Ecolab's

2    motion to decertify the class because it had "failed to present evidence that even one [employee]

3    spent more than 50% of his or her time, on a purely quantitative basis, involved in sales."[102]

4    Ecolab has come closer to the mark here, but again it has fallen short.

5    *Second*, Ecolab argues in the alternative that the applicability of another overtime

6    exemption, for employees who receive commissions, also requires an individualized examination

7    and thus defeats predominance.  This exemption appears in Wage Orders 4 and 7 from

8    California's Industrial Welfare Commission, and it covers employees whose "earnings exceed one

9    and one-half (1 1/2) times the minimum wage if more than half of that employee's compensation

10   represents commissions."[103]  Wage Order 4 regulates "all persons employed in professional,

11   technical, clerical, mechanical, and similar occupations,"[104] while Wage Order 7 applies to "all

12   persons employed in the mercantile industry."[105]  Notably, however, the commissioned

13   salesperson exemption does not appear in Wage Order 5, which applies to "all persons employed

14   in the public housekeeping industry."[106]  The order defines the "public housekeeping industry" as

15   "any . . . business . . . providing maintenance services . . . in [a covered] establishment," including

16

17

largely consistent with his declaration.  *See* Docket No. 31-2, Ex. C at 31:17-36:19, 61:16-66:17;
Docket No. 36-1, Ex. 9 at 154:4-21, 169:7-171:3.  The only new information from Nygaard's
deposition was his testimony that he spent most of every Wednesday prospecting for new
customers if no emergency service calls arose.  *See* Docket No. 36-1, Ex. 9 at 100:14-102:17.
However, this was not sufficient to take him over the 50% threshold.

[102] *Ross*, 2015 WL 5681323, at *13.

[103] Cal. Code Regs. tit. 8, § 11040(3)(D); *id.* § 11070(3)(D).

[104] *Id.* § 11040(1).

[105] *Id.* § 11070(1).  The "mercantile industry" is defined as "any industry, business, or
establishment operated for the purpose of purchasing, selling, or distributing goods or
commodities at wholesale or retail; or for the purpose of renting goods or commodities."  *Id.*
§ 11070(2)(H).

[106] *Id.* § 11050(1).

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1  restaurants, bars, hotels, hospitals and other such locations.[107]  "To determine which order is

2  applicable, one must look at the main purpose of the business being examined."[108]

3       Plaintiffs assert that all TMs and HTMs fall under Wage Order 5 and therefore cannot

4  qualify for the commissioned salesperson exemption.  While Ecolab believes that they are covered

5  by Wage Order 4 or 7, the court need not decide the issue now.  The applicability of a particular

6  wage order turns on the main purpose of Ecolab's business as a whole, and that question is

7  undoubtedly suited for class adjudication.

8       If Wage Order 4 or 7 does cover the putative class, however, Ecolab argues that the court

9  should not certify the class because the requirements for the commissioned salesperson exemption

10  are not amenable to class treatment.  As above, the exemption applies if an employee's "earnings

11  exceed one and one-half (1 1/2) times the minimum wage if more than half of that employee's

12  compensation represents commissions."[109]  Although the wage order itself does not explain

13  exactly what "commissions" means, the California Supreme Court has looked to another statute

14  that defines the term as "compensation paid to any person for services rendered in the sale of [an]

15  employer's property or services and based proportionately upon the amount or value thereof."[110]

16  This definition "sets up two requirements, both of which must be met before a compensation

17  scheme is deemed to constitute 'commission wages.'"[111]  "First, the employees must be involved

18  principally in selling a product or service, not making the product or rendering the service."[112]

19  "Second, the amount of their compensation must be a percent of the price of the product or

20

21  [107] *Id.* § 11050(2)(P).

22  [108] *Wamboldt v. Safety-Kleen Sys., Inc.*, Case No. 07-cv-00884, 2007 WL 2409200, at *6 (N.D. Cal. Aug. 21, 2007).

23

24  [109] Cal. Code Regs. tit. 8, § 11040(3)(D); *id.* § 11070(3)(D).

25  [110] *Ramirez*, 20 Cal. 4th at 803-04 (quoting Cal. Lab. Code § 204.1).

26  [111] *Id.* at 804 (quoting *Keyes Motors*, 197 Cal. App. 3d at 563).

27  [112] *Id.* (quoting *Keyes Motors*, 197 Cal. App. 3d at 563).

28

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

service."[113]

Common proof can satisfy both of these requirements.  In fact, in *Ross*, Judge Hamilton granted class-wide summary judgment against Ecolab on the applicability of the commissioned salesperson exemption.[114]  As she noted, the first prong of the exemption—whether an employee is "involved principally in selling a product or service"[115]—implicitly invokes the same quantitative test used to decide the applicability of the outside salesperson exemption.[116]  The court already has found that this question may be decided on a class basis.  As for the second prong, Judge Hamilton interpreted the commissioned salesperson exemption to require that the commissions be calculated based on sales that the employees make themselves.[117]  The court finds her reasoning persuasive and consistent with *Ramirez*.  Like the Ecolab employees who brought the suit in *Ross*, all TMs and HTMs earn commissions based on total sales to their assigned customers, regardless of how the customer actually ordered Ecolab products.[118]  No individualized inquiries are necessary to determine whether a particular employee qualifies for the commissioned salesperson exemption.

**Third**, the parties dispute whether a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy."[119]  Rule 23 sets out four factors to guide this analysis.[120]  Two are not relevant here.  Neither party has identified any other "litigation

---

[113] *Id.* (quoting *Keyes Motors*, 197 Cal. App. 3d at 563).

[114] *See Ross*, 2015 WL 5681323, at *7-9.

[115] *Ramirez*, 20 Cal. 4th at 804 (quoting *Keyes Motors*, 197 Cal. App. 3d at 563).

[116] *See Ross*, 2015 WL 5681323, at *7 (citing *Ramirez*, 20 Cal. 4th at 804).

[117] *See id.* at *8.

[118] *See* Docket No. 30-1, Ex. 3 at ¶ 26; Docket No. 30-3 at 238:20-239:1; Docket No. 30-5, Ex. 21 at 30:18-31:25, 79:15-80:11, 116:9-118:14.

[119] Fed. R. Civ. P. 23(b)(3).

[120] *See id.*

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   concerning the controversy already begun by or against class members."[121]   And because all the

2   claims arise under California law, "concentrating the litigation of the claims in [this] particular

3   forum" makes perfect sense.[122]

4            As to the first factor, "the class members' interests in individually controlling the

5   prosecution or defense of separate actions,"[123] Ecolab notes that one of the named Plaintiffs seeks

6   $225,000.[124]  Where each class member seeks a large amount of damages—in relative terms—this

7   factor does cut against class certification.[125]  But the $225,000 figure comes from a back-of-the-

8   envelope calculation by a single class member[126]—one who evidently felt aggrieved enough to file

9   suit.  Not all of his fellow class members may be similarly situated or motivated.  The sheer

10  number of potential class members also suggests that it would be too burdensome for each of them

11  to file suit individually.  Moreover, their claims for relief raise legal questions that overlap

12  considerably.  Even if each class member does seek substantial damages, class adjudication is still

13  superior.

14           That leaves the fourth factor, "the likely difficulties in managing a class action."[127]  Ecolab

15  makes much of the fact that Plaintiffs have not yet set out a plan for how to conduct a trial.

16  However, the Ninth Circuit has rejected "grafting a requirement for a trial plan" onto Rule 23.[128]

17

_____

18  [121] Fed. R. Civ. P. 23(b)(3)(B).

19  [122] Fed. R. Civ. P. 23(b)(3)(C).

20  [123] Fed. R. Civ. P. 23(b)(3)(A).

21  [124] *See* Docket No. 30-1, Ex. 2 at 332:17-335:18.

22  [125] *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

23  [126] *See* Docket No. 30-1, Ex. 2 at 332:17-335:18.

24  [127] Fed. R. Civ. P. 23(b)(3)(D).

25

26  [128] *Chamberlain v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005).  Only in a case
    potentially involving the law of 48 states has the Ninth Circuit asked plaintiffs seeking

27  certification to demonstrate "a suitable and realistic plan for trial of the class claims."  *Zinser*, 253
    F.3d at 1189 (quoting *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 454 (D.N.J. 1998)); *see also*

28  Case No. 14-cv-04358-PSG
    ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

20

1  And, as discussed above, liability here does not depend on the individual experiences of the

2  potential class members to the extent that individual issues predominate over the common ones.

3  "Litigation by class action has long been recognized as a superior method of resolving

4  wage and hour claims in California."[129]  More specifically, "[t]he theory of liability—that [Ecolab]

5  has a uniform policy, and that that policy, measured against wage order requirements, allegedly

6  violates the law—is by its nature a common question eminently suited for class treatment."[130]

7  This case is no exception.

8  **IV.**

9  "An order that certifies a class action must define the class and the class claims, issues, or

10  defenses."[131]  Clearly delineating the contours of the class provides the parties with clarity and

11  assists class members in understanding their rights and making informed opt-out decisions.[132]  If

12  class members are impossible to identify without extensive and individualized fact-finding or

13  "mini-trials," then a class action is inappropriate.[133]  No such difficulties arise here.

14  The court therefore certifies a class of persons described as:  "All current and former

15  employees of Ecolab Inc., in its Institutional Division in California who have held one or more of

16

17  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("A district court's duty to

18  determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions.").

19  [129] *Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362, 367 (2014) (citing *Brinker*

20  *Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012)).

21  [130] *Brinker*, 53 Cal. 4th at 1033.

22  [131] Fed. R. Civ. P. 23(c)(1)(B); *see also Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 187-88

23  (3d Cir. 2006) ("[T]he text of the order or an incorporated opinion must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be

24  certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis.").

25  [132] *See Wachtel*, 453 F.3d at 187.

26  [133] *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) (quoting

27  William B. Rubenstein, Newberg on Class Actions § 3:6 (5th ed. 2013)).

28
Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

*United States District Court*
*Northern District of California*

the following job titles at any time from June 4, 2010 to the present:  Territory Manager, and/or Hospitality Territory Manager."  The court certifies the causes of action alleged in Plaintiffs' First Amended Complaint[134] as appropriate for class treatment.  The court further certifies the named Plaintiffs as the representatives of the aforementioned class and their counsel of record as counsel for the class.

**SO ORDERED.**

Dated: February 16, 2016

PAUL S. GREWAL
United States Magistrate Judge

---

[134] *See* Docket No. 1-2, Ex. B.

22

Case No. 14-cv-04358-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION